Good morning, Your Honors. May it please the Court, Karen Baumholtz on behalf of Appellant Teva Pharmaceuticals USA. If I may, I'd like to reserve five minutes of my time for rebuttal. All right. There are multiple ways that this Court can properly reverse the District Court's remand order here, but the easiest and simplest way, and of course the primary reason why this Court is now before this Court after the grants of the petition for permission to appeal, is the CAFA issue, so I'll start there. And that question, of course, is whether seeking a coordination of cases involving more than 100 persons for all purposes, where it's undisputed that the amount in controversy is also met, are those cases subject to removal under CAFA's mass action provision? And the answer to that question, which this Court has never been called on to answer before today, is yes. Now, other circuits and this Court in Tano have addressed the mass action provision of CAFA generally to try to give meaning to the phrase proposed to be tried jointly in that statute. And all of those cases actually come out in a very harmonious way. They follow along really a spectrum. And the spectrum is this. If you look at mass action and where a case crosses a line into a mass action as being in the middle of the spectrum, on the far end you've got cases like Tano, this Court's decision in Tano, the Seventh Circuit's decision in Anderson, and also I believe it's the 11th or maybe it's the Seventh Circuit in Simone, where you've got individual cases filed all over the state, where there's never any effort made to bring those cases together for any kind of purpose. Now, you've got in the middle, much closer to the mass action line, the decision in Coral, where Judge Posner said that case fell just short of the mass action line because all the plaintiff's counsel did in that case was sort of opine as to what might happen in the cases and how they might proceed. Now, on the other end of the spectrum, you've got Bullard and Abbott out of the Seventh Circuit. And in both of those cases, you have a situation where the plaintiffs have made an affirmative effort. In Bullard, it was in the filing of a single complaint. In Abbott, which is on all fours with this case, it was in seeking coordination of cases that had been splintered and then brought back together under Illinois' coordination procedures. So, counsel, I wanted to ask you about your statement that N. Ray Abbott is on all fours with this case. So by making that statement, are you suggesting that the Illinois Supreme Court rule is the same as the rule in California that allows coordination of cases? I am not. The Illinois rule in California is different in this respect. In Illinois, you can seek coordination for pretrial purposes or for trial purposes. In California, you can only seek coordination for all purposes. But it is the same. The request is exactly the same in both cases, because in Abbott, the request is a coordination through trial, which was what the statute permitted. And here, the request is a coordination for all purposes. So procedurally, how does it work in California? So the request for coordination is through the 404 petition, is that correct? That's correct. And so what does that mean under the California procedural rules? What happens after the petition is granted? After the petition is granted, the cases are all brought together under a single what we call the JCCP case number, before a single coordination trial judge under the rules, and the cases are handled together. Is a joint trial the only possibility under the California procedural rules? In other words, does the fact that a 404 petition has been granted necessarily mean that all of the cases will be tried together? It depends on what you mean by tried together. And it depends on how we define tried jointly in CAFA. But it does mean that these cases, the presumption under California law is that these cases will go forward before the single coordination trial judge for all purposes through the end of the case. Does it matter to your argument whether or not the cases are tried together with one jury hearing all of the cases, or if they're tried seriatim with serial juries hearing each case? Does that matter to your argument? Not the slightest bit, and for multiple reasons. First, how these cases are going to be resolved at the end of the day and how the coordination procedure is going to actually go forward is immaterial for CAFA's purposes. Every one of these cases, from Tano to Abbott, has said we don't try to guess how these cases are actually going to go forward. What we look at is what has the plaintiff done. What has the plaintiff proposed? And, of course, that's what the statute requires. So the starting place for this Court, and we can delve into California's procedures and statutes, but the starting place for all of these cases and for this one has to be what did the plaintiff propose here. And the plaintiff here proposed coordination before a single trial judge for all purposes, and I can envision nothing, we can't even guess what could be more than for all purposes. It has to mean for trial. I'm curious as to whether there has to be an effective consolidation of the cases as opposed to coordination of the cases before CAFA is triggered. What's your response to that? Well, I have two. First, if what the Court means by consolidation is literally a super trial. The legal term, the way we use consolidation when judges consolidate a case. That's the way I'm using it. Okay. In California, it's a little bit different, because we have a consolidation procedure, which deals with bringing cases together that are already before the same court, and we have a coordination procedure, which deals with bringing cases together that are pending all over in different venues. For all practical purposes, they're exactly the same. So when you seek coordination, you're seeking the joining together of cases before a single judge empowered with all the authority of one trial judge, but they're cases coming from all over the place. Well, let me ask you this. In order for these cases to all be tried together before one jury, would there then have to be consolidation under the California procedural rules? No. The coordination procedure would allow the trial judge, the coordination trial judge, and that is a defined term in the statute, to proceed in any number of ways. We start with the presumption that the trial judge is going to conduct, in theory, a giant trial. You can look at the McGann case out of California that's actually been cited by the plaintiffs. You start with that presumption, and then the trial judge, of course, has discretion, just like any single trial judge would have in a single plaintiff defendant case, to sever issues, to sever claims, and to proceed in that way. Why wouldn't it be more appropriate to make that determination once the trial judge has actually teed up all the cases for trial together, at which point we would know that all of the cases are going to be tried as one? Why wouldn't it be more appropriate to make that decision at that time? I think the answer to that question is threefold. One, it would gut CAFA. If you're going to proceed through the entire case, and the only time at which a defendant or group of defendants could remove the case would be on the eve of trial, then CAFA ---- Well, coordination is made substantially before the eve of trial. Coordination is, and that's happening. I mean, consolidation generally is made substantially before the eve of trial. Right. And I need to make sure that the Court understands when we're in California, there is no practical difference between the term and the statute. They have separate statutes to deal with that, because it has to deal with the power of a judge in a particular venue. So you've got power and jurisdiction over a case in a single case where there are multiple cases pending before the same court, say Los Angeles Superior Court. In either event, in either event, consolidation or coordination, and here we're dealing with coordination under Section 404, does that judge on the state level, once it's coordinated, still have the discretion to say that, well, look, I want to decide all these pre-trial issues, dispositive motions, pre-trial discovery motions, but then throw it back to some district, some judge, Superior Court judge to say, well, look, I've prepared it, you try it now. The coordination trial judge has all kinds of discretion to sever claims, sever penalties, and so forth. Sever issues, send things back. But the focus on what the power that that coordination or consolidation trial judge has to do is not the focus that CAFA demands. The CAFA demands that the Court look at what a plaintiff has proposed or what someone other than the defendant has proposed. And, in fact ---- Kennedy But if a judge disagrees and says, does the record show whether or not there was any opportunity to do that? Was there any time for the coordination judge here to say that, well, I'm going to do some bail weather trials or I'm going to let other judges do these other trials? Was there any indication in the record of that? Because if the judge disagrees that it should be done for all purposes, including joint trials ---- Okay. I think I need to back up and explain the coordination procedure a little bit better, because what happens is ---- Kennedy You know more about it than I do, being from Louisiana. It's a whole different world. It's interesting, actually, because, and I want to just stress before I answer that again, that we really should not be looking at what might happen, and every one of these cases emphasizes that. Bullard, Abbott, Corl, we ---- Tano, even Tano says something might happen down the line that will trigger removal. We should be looking at what the plaintiff has done at this stage in the case. But to back up for a minute, just to clarify the coordination procedure, what happens is you make a request to the Judicial Council of California, which is comprised of judges, and the motion is made, which the plaintiffs did here. You ask for a particular coordination for all purposes, which is what the plaintiffs did here. They asked for coordination for all purposes. And in order to avoid the risk of inconsistent judgments, determinations on liability and the like, now, the Judicial Council takes a look at it, decides whether the requirements for coordination are met, and then rules on that coordination petition. Now, because CAFA triggers under Section 1447 of Title 28 our obligation to remove, we have no choice but to remove when the proposal is made by the plaintiff. So by the time this was removed ---- Well, we have a choice not to remove, but if we choose to remove and exercise our federal statutory right to a federal forum, we're on the clock when the proposal is made. And we've got to do it ---- If I could ask you two quick questions. One, when they made their proposal in their request for the coordination, didn't they as part of that say they did not want inconsistent judgments? Yes, Your Honor. Doesn't that imply that to honor that, what they're proposing would require some type of a joint trial procedure, I suppose? That's exactly right, Your Honor. And that is also the situation that you saw in cases like Bullard and Corl, where the Seventh Circuit said there was no other way that this would proceed other than a joint trial. Let me ask you my second question, then I can get out of the way. And this may be off base. If so, just shut it down. But I thought the Supreme Court recently issued some ruling that said that plaintiffs could not avoid federal jurisdiction by stipulating that their damages were underneath the required materiality level. And if that's correct, does that have any bearing on whether plaintiffs can divide up their action into a bunch of actions, each with less than 100 named plaintiffs, and thereby avoid CAFA? Yes, but not precisely for the reason that Your Honor is suggesting. The case you're talking about is Standard Fire v. Knowles. And the Supreme Court said that plaintiffs can say whatever they want, essentially, as the holding of that case. But if they are saying something that does not validly exist in law, then they can't defeat federal jurisdiction. In that case, it was the amount controversy. Now, that does bear on this case to some degree, because while the plaintiffs in this case might say, well, we only want coordination for discovery purposes, that's not available to them under California law. And so the court has to disregard that in deciding whether CAFA applies. Now, I don't think Standard Fire would go so far as to preclude plaintiffs like these from filing separate actions all over the state, taking their picture, dividing it into little puzzle pieces, and filing in 99 plaintiffs all over the state, so long as that's Tano, so long as they don't then take the step of saying, now I'm going to take all these puzzle pieces and put them back together in a coordinated proceeding. That's Abbott, and that's this case. When you take that extra step, and Tano left this open, when you take that extra step and you make that proposal that the case be joined for all purposes in our case through trial in Abbott, it really is the same. If you're going to engage in a dialogue over what those words mean, they have to mean the same thing. When you take that extra step, our federal statutory right to a forum in the federal courts is triggered. It's what Congress intended to do. Counsel, may I ask you where in the record I can find the plaintiff's request or desire that there not be inconsistent judgments? I thought it was inconsistent legal rulings. Yes, Your Honor. If you would just give me a moment. The key passages are in our excerpts at pages 160 to 180. Okay. I can find it myself. Because you're over your time. We'll give you a minute for rebuttal, and perhaps you can bring it back when you come back. Right. Thank you, Your Honor. We'll hear from Plaintiff's counsel. Good morning, Your Honor. Stuart Esner on behalf of plaintiffs. The beginning and end of this matter is really simply what the term proposed to be tried jointly means. In Tanho, this Court specifically held the plain meaning of that term controls unless it results in an arbitrary result. The district courts and this Court in Tanho have concluded that when Congress used the word, the term proposed to be tried jointly, it actually meant a trial of 100 or more plaintiffs at the same time before the same jury. In Tanho, this Court, as this Court knows, the Court considered whether a CAFA was implicated by multiple cases of less than 100 involving similar claims, and this Court said no, I quote, because neither the parties nor the trial court has proposed consolidating the action for trial. So, counsel, would you agree that if the plaintiffs articulated a desire to avoid inconsistent judgments, that would be an intent for the cases to be tried jointly? No, Your Honor, because at best what that would do was simply, well, all that plaintiffs did in their proposal for their petition for California's coordination statute, which provides that the action is to be before one judge hearing all the actions for all purposes in a selected site or sites under Code of Civil Procedure section 404.1. The key is having one judge hear all the actions. It doesn't have anything to do with how many trials there will be before that one judge in that case. It has to do with how many trials there will be in that coordinated proceeding, so that there's nothing in the proposal suggesting that any one trial contain 100 or more plaintiffs, as is required under CAFA. And under California... Did the proposal say that you didn't want inconsistent judgments, or did it not say that? I don't recall whether it was judgments or rulings as I'm standing here, Your Honor, as I get back to counsel table. The district court referred to rulings. Rulings, I believe. That's why I was curious as to whether it said judgments. But in any event, under California law, there's nothing that allows a court to use a judgment in one aspect of a coordinated proceeding, as a result of one coordinated trial, as binding on a separate coordinated trial in that same coordinated proceeding. The same would be true for the court's rulings. There's no legal doctrine under which the judge, in presiding over trial number one involving hypothetically 20 plaintiffs, is required to render the same ruling on the same legal issue in case trial number two involving 20 other plaintiffs. And that is under Abelson v. National Union, cited at page 23 of our brief, specifically says that's not the case. So whether it's rulings or judgments, the fact remains, there's nothing that requires that there be a bind. Under California law, the rulings in one trial are not binding on a subsequent trial. Why would we expect rulings of the same judge to be different in two different cases? We wouldn't, and that's the purpose behind the coordination statute, is that it creates the expectancy of consistent rulings. That's why when a plaintiff petitions for coordination, whether it's for purposes of consistent rulings or judgments, the fact is that the plaintiff is simply requesting what is likely to be the case, but not legally required to be the case. And therefore, it's not necessarily implied in a request for coordination that there be a trial of 100 or more plaintiffs. It simply means that after one trial has occurred and one result has been reached, the expectancy will be that the rulings and the decisions from that first trial may be replicated in the subsequent trial, and that may facilitate settlement of the action or a resolution of the action, but it's the rulings or results of that first trial are not binding on the subsequent trials under California law. Do you agree with your opponent that this Court should not look at the authority that California consolidation law allows for that judge to say, well, look, I realize this might have been sent to me for all purposes, including trial, or impliedly a joint trial, but I've reached a point where really it doesn't need that. I'm going to send this back. I've ruled on all dispositive motions, it's ready for trial, but I'm sending this back. Do we have authority to look at that, or are we limited by what you placed in your petition? Both. And the reason it's both is what we said in our petition is simply invoking the California coordination procedures. So it simply can't be the case that you look at simply this petition for coordination without regard to what it is the plaintiffs are requesting. The plaintiffs are requesting to invoke a procedure under California law that has certain parameters. So was the district judge wrong when he, in his effort to distinguish Abbott, said that in Abbott the request of consolidation was through trial, whereas here, I'm quoting at ER6, plaintiffs request in this case focus on coordination for pretrial purposes? Well, no, he wasn't wrong, because the focus of the petition was on pretrial discovery and motions being consistent. And it is the case that in Abbott the Seventh Circuit specifically looked at the particular language used by the party plaintiff in that case through trial to infer that the request of coordination was for trial purposes, for purposes of a unified trial. That's what the plaintiff was inferentially, according to the Abbott court requested. I may respectfully disagree with that interpretation, but that is a distinction here where the coordination petition wasn't through trial. And importantly, in Abbott, the court specifically relied upon the fact that even if the trials in that matter were less than 100 plaintiffs, the court said even if it were only 10 exemplary plaintiffs, followed by application of issue or claim preclusion to 134 more plaintiffs with another trial, that is one in which the claims of 100 or more persons are being tried jointly. That may be true under Illinois law where there may be bellwether trial, the results of which are conclusively binding on subsequent trials, so that even if all the claims are not before the same jury, it is nevertheless in reality a trial of 100 or more plaintiffs. That's not the case under California law, where the bellwether trial has no legally conclusive effect on the subsequent trials. It simply suggests what the result in the future may be. And I think it's a ---- But does it have a practical effect on the future trials? Of course it has a practical effect, but that's not what Congress said in CAFA. Congress said that in order to invoke CAFA for a mass trial, remember, CAFA is primarily concerned with class actions. And Congress said, well, mass actions sometimes replicate class actions, so we're going to add class actions as well. And in this ---- and except, Congress said, when they concern solely pretrial matters, as long as a proposal was made to be jointly tried. This Court in Tano specifically said that Congress intended to limit the numerosity component of mass actions quite severely. It recognized that Congress actually meant to have this mass action provision applied rarely when there is an actual trial proposed of 100 or more plaintiffs. But if you have 100 or more, but they're split up into several different lawsuits, would it serve the purposes of CAFA to count that, look at them together, if they are likely to have the same effect? No. Or is that too much because of the literal language of the statute? It is too much under the literal language of the statute, but it also wouldn't serve the purpose of CAFA. In the Senate report concerning the purpose behind CAFA, and both parties, interestingly, cited this passage, Congress was clear that the reason for the mass action provision is because mass actions sometimes share the same evil as class actions, according to Congress. That if a jury hears cases involving multiple plaintiffs at the same time, it may increase awards as to some of those plaintiffs based upon the damages incurred by other plaintiffs, even though there's insufficient evidence supporting the damage award as to the one plaintiff. That evil could only occur if there's an actual trial in front of the same jury involving those multiple plaintiffs. That evil doesn't occur when multiple juries hear the claims of plaintiffs over a period of time. Different juries, I should say, hear the claims of different plaintiffs over a period of time. So neither the language nor the purpose of the mass action provision in CAFA support the defendant's argument. So, counsel, you wouldn't disagree that if at some later point in time the cases were consolidated to the extent that there were 100 or more, that there wouldn't be any harm to the plaintiffs? That it would be appropriate to seek CAFA removal at that point? If, in fact, there's a proposal or a ruling for a trial of 100 or more plaintiffs before the same jury at the same time, we would agree that CAFA applies. Have the cases in the California courts been stayed pending resolution of this issue? No. There's been no stay? No stay, Your Honor. There were alternative grounds argued in the concurrently filed opening brief that weren't addressed in the appellee's answer brief. I'm prepared to answer any questions the court has or discuss any of those alternative grounds. It is plaintiff's position, however, that when the court accepts an appeal from an order remanding a case to state court under CAFA, that the alternative grounds for jurisdiction are not property before the court, because the whole purpose behind the rule allowing appellate review of CAFA remand orders, unlike any other kind of remand orders, is that Congress wanted to or desired to create a body of federal appellate law concerning CAFA. That purpose obviously wouldn't be served by addressing the alternative grounds. Moreover, an order remanding a case to state court is much different than an order denying a motion to remand, as this court recognized in Nevada v. Bank of America court, because... Yeah, I have no question about anything other than CAFA, and I'm not sure we have jurisdiction to get into other grounds for remand. Then I will stop, Your Honor. Other grounds to reverse remand is what I meant. I understand, Your Honor. And unless the court has any other questions? It appears not. Thank you very much. Thank you, counsel. We'll have rebuttal. And while counsel is coming, I would note that I did search the record while you were sitting there, and I did see page 239 says inconsistent rulings, orders, or judgments, and page 243 says inconsistent rulings, orders, or judgments. Thank you, Your Honor. Those are citations from the appellee's appendix, so they're a little differently numbered. I'm not sure you picked up all of them. At our excerpt of record 175, line 12, you will see inconsistent rulings, orders, or judgments, as well as ER 175, line 12. ER 177 at line 16, and ER 184 at line 12 1⁄2. I want to focus the court a little bit on what tried jointly actually must mean, because there's a lot of assumption here that it means a single super trial. And I want to talk a little bit about why that cannot be the reading to give to this provision. Congress was talking about at least 100 plaintiffs, right, when it did this, when it enacted this mass action provision. In some cases we're talking about thousands. Abrego, Abrego is one of the mass action cases from this court. It didn't deal with the tried jointly language, but there were thousands of plantation workers at issue in that case. If you interpret tried jointly to mean every single one of at least 100 plaintiffs being tried in front of a single jury, that would be to render Congress's intent completely meaningless. The plaintiffs have said, the district court said, well, these kinds of super trials rarely if ever happen where you've literally, you are literally trying one plaintiff after another in front of one single jury for, I don't know, a couple of years. If it doesn't happen, then Congress could not have been intending for tried jointly to mean one giant Renton Auditorium kind of proceeding. Counsel, let's assume we agree that perhaps Bellwether trials could be, could occur, and while he may be binding on that particular trial, not binding on others, and you expect hopefully it might help settle the remaining ones. But I'm troubled by to what extent should CAFA, like other removal, the other removal statutes that we have in the federal system, be strictly construed? And if it is still such, so construed, would you lose? No. Here's why. First, the traditional rule of construing against removal wouldn't have this court construe CAFA and its provisions against removal. It would have the court construe the statute to mean what it means. Secondly, although we absolutely bear the burden of demonstrating that jurisdiction exists, Congress intended to expand the federal court's jurisdiction in this case, and in fact, really did intend that the courts err on the side of favoring a federal forum for these kinds of cases of national importance. You can look at the expressed provisions of CAFA and the meaning and the reason for it for that. We cited the courts of the In Re Textiles case. I think we've cited it. But there is a case that also suggests the same. And thirdly, even if you do, yes. I'm sorry, Your Honor. I saw those, and I'm also looking at Standard Five v. Knowles from the Supreme Court 2013, where it talks about ensuring federal court's consideration of interstate cases of national importance. But in doing so, it talked about we should avoid exalting form over substance. From your interpretation of 404 and what a petition shows, aren't we doing the reverse of that? No, I don't think so. What the plaintiffs have asked for here and what you heard in argument was we want these things to be tried jointly. We want these things to go forward so that we don't have inconsistent judgments in a joint manner, in conjunction with one another. If not, there's no reason to coordinate. They can create under TANO separate actions and never ask for them to be brought together. But when you bring them together, you're doing exactly what Congress was trying to curb, which was the, you know, pseudo class action, where I've got all these different cases, but I'm taking some action without actually certifying it and trying a representative claim, although that is exactly what's being suggested will be the case here, and put those in front of a federal court. Now, the other, I just want to touch on two more reasons why you can't read this statute in the manner that is being suggested to you, which is a single super trial where you rent, in this case, it wouldn't even be an auditorium, you've got 1,500 plaintiffs, you'd be renting the Rose Bowl to try these cases. Congress recognized both the similarities and the differences between class actions and mass actions. And class actions involve representative trials, not trials of every single class member. So if you're looking for Congress's intent to curb things that looked like class actions, then in fact, the bellwether and the representative trials that the court is suggesting may be the case here are exactly that. They function identically to class actions. And thirdly, if you're over your time, could you wrap up, please? Sure, Your Honor. Just thirdly, if everything short of calling every witness in front of a single jury is trial, then there is no effect given to the exclusion for those cases in which the proposal is that the cases be joined for pretrial purposes only. Because by definition, you've only got those two categories if you read trial to mean the moment at which witnesses are called. And if I could just conclude with this, all of the circuit cases to have addressed this mass action provision so far have said things like, and this is from Bullard, it does not matter whether a trial covering 100 or more plaintiffs actually ensues. The statutory question is whether one has been proposed. And in Bullard and in Abbott, the simple act of coordinating, and in Abbott it was, quote, through trial, and I would submit that, quote, for all purposes, which is the language used here, are identical. There's no way to read them differently. Every case has so held, and this is exactly the kind of action that Congress was looking at when it enacted the mass action provision. Thank you, Your Honor.
judges: Lemelle, Gould, Rawlinson